## COLHOUN *v.* HODGSON.

PATENT INTERFERENCE; PRELIMINARY STATEMENT; CAVEAT;
PATENT PRACTICE.

1. In a patent interference case, the date given by one of the contestants in his sworn preliminary statement filed in the Patent Office, as the date of his invention, will be deemed conclusive, and testimony of a conception by him of the idea prior to such date will not be considered.
2. In such a case, which involves the priority of invention of a method of sealing cans, the filing of a caveat by one of the parties to the interference before the application of the other for a patent, stating that he had invented an improved process and desired protection while maturing the same, will not negative a claim made by him in the interference proceeding that he had reduced the invention to practice prior to the filing of the caveat, but is evidence rather that tests had been made and protection was simply wanted until time should show whether or not the process was practicable.
3. Where in such a case the record shows that certain questions involved were not finally passed upon by the Patent Office, but remained open for future determination, this court will not consider or decide them.

Patent Appeals, No. 16. Submitted November 13, 1894. Decided December 4, 1894.

HEARING on an appeal from a decision of the Commissioner of Patents in a patent interference proceeding.

The interference was declared February 9, 1892; proofs were taken and the case tried before the examiner of interferences, who decided in favor of Colhoun. From this decision an appeal was taken by Hodgson to the board of examiners in chief, who affirmed the examiner of interferences. Hodgson thereupon appealed to the Commissioner of Patents, who, on April 5, 1894, reversed the board of examiners in chief and awarded priority to Hodgson. From this last decision Colhoun appealed to this court. *Reversed.*

*Messrs. Price & Stewart* for the appellant.

*Messrs. Munday, Evarts & Adcock* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference declared between the appellant Charles M. Colhoun and the appellee John G. Hodgson, upon application for patents for a process of fastening the tops upon tin cans. The issues are thus defined in the record:

" 1. A piece of tin adapted to be united by soldering to another piece, and furnished with a pocket corresponding in position with the line of the intended joint, said pocket containing sufficient solder for forming the joint, united or combined by heat or melting with the tin coating to that piece only which contains said pocket.

" 2. A metal can having an opening in one of the heads, a groove formed around the opening and a coating of solder melted and combined with the tin surface coating in said groove to receive the edge of the cap or cover and be united therewith by soldering in the sealing of the can."

The question is one of fact as to the priority of invention between the appellant Colhoun and the appellee Hodgson.

1. The date of Hodgson's alleged invention must be fixed as of December 1, 1886, which is the date given in his preliminary statement to which he was sworn. Although he introduced some evidence tending to show that he conceived the idea and tested its practicability in the " fall of 1886," it cannot be considered to change the date made in the statement aforesaid, which answers for what may be called his pleading in the case. These preliminary statements are required by the rules of the Patent Office, and it is therein provided that: " The preliminary statements should be carefully prepared, as the parties will be strictly held in their proofs to the dates set up therein." Rule 110. There was no attempt to amend this statement, for which ample provision is also made in the rules. Rules 112, 113, 153.

2. We agree with the Commissioner that the evidence given by Colhoun and his witnesses, as to the exact date of the conception of the invention and its reduction to practice, is general and could probably have been rendered more certain by referring to his books and business records at the time. But at the same time we think there is sufficient evidence in the record to show that he conceived the idea and actually reduced it to practice in canning tomatoes prior to December, 1886. His testimony tended to show that, in the canning season of 1886, and as early as September, he canned tomatoes in his canning establishment at West River, Maryland, by use of this process. It does not appear plainly whether there were three or four hundred cans or three or four hundred cases of cans thus prepared, sealed, labeled and shipped in the due course of trade. If true either as to the number of cans or the number of cases of cans, this testimony shows completed invention and reduction to practice.

Considering the time which has elapsed between the alleged invention and the application for patent, as well as the general nature of this testimony as to dates, it is subject to the criticism indulged in by the Commissioner, and we would not disturb his conclusions thereon but for strong corroborating evidence furnished by the records of the office. On October 18, 1886, Colhoun filed a caveat in the office of the Commissioner based upon this alleged invention. He recites therein the diffiulty encountered by fruit packers in preserving their goods so that they will not spoil after sealing. The greatest part of the difficulty is in getting a perfectly tight joint between the cap and the can top which will be free from " blow holes " through which the air would be admitted. He says then : " My invention relates to a process by which cans can be sealed with the minimum of danger of loss from this cause. In sealing a can, as it is done at present, the cap is put on to the lid, the edge resting in the groove, and either drop or wire solder put into the

groove and melted by a soldering iron and spread around in the groove so as to cover the joint between the cap and the lid. If the solder can be rubbed by the soldering iron up under the edge of the cap it is considered a great gain. In order to insure the covering of the joint between the cap and the lid, the whole groove is filled with solder, and much more solder used than I consider necessary. My invention consists in coating the groove of the lid of the can with solder when it is made, or at any time before it is sealed, applying a very small quantity of solder for this purpose, allowing it to cool, and after the can is filled with goods, placing the cap on the lid so that its edges will rest on the solder in the groove. The solder will then be between the tin of the lid and the inside edge of the cap. The soldering iron is then applied to the outside of the cap and the solder united by the conduction of heat through the edge of the cap. What solder runs out from beneath the edge of the cap is rubbed into the joint with a soldering iron. The great advantage acquired by my invention is that the two surfaces of tin, the outside of the edge of the lid and the inside of the edge of the cap, are united by solder, insuring a union that is much more secure than can be had by the method now in use. It is my intention that the solder should be applied to the can when it is made, so that when the packer buys his goods he can buy a prepared can, and need not think of the solder."

This is substantially the process described in the issues of the interference. One William Gucht also testified that he was a canmaker, and had sold cans to Colhoun up to 1887. He says that in May or June, 1886 or 1887, Colhoun talked with him about the cost of making cans and preparing them for capping in that way, but he discouraged the idea as being unprofitable.

The Commissioner regards the statement in the caveat that, "having invented an improved process for soldering the caps on tin cans and desiring further to mature the

same, file this my caveat therefor, and pray protection of my right until I shall have matured my invention," as evidence that the test of the invention and reduction to practice could not have occurred, as claimed, during the packing season prior to October 18, 1886. The argument is that the invention was perfect and complete at that time, and the expression of a desire to mature the same, in the caveat, shows that it could not then have been reduced to practice. We cannot give our assent to this conclusion. There is no doubt that the invention, as such, was complete at the time, but it could not be certain that it would answer the purpose for which it was intended. The difficulty with the old method of sealing was that the cans frequently admitted the air, whereby the contents became spoiled. It remained to be seen if cans sealed by the new method would answer the purpose better. This could not be demonstrated save by the tests of time and transportation. The sealing at the time was complete and seemed perfect; the next question was its durability under the ordinary strain to which the filled cans are necessarily subjected. The whole value of the invention turned upon this test, as was the case with the Nicholson pavement, under consideration in *Elizabeth* v. *Pavement Co.*, 97 U. S. 126, 136.

In our opinion, therefore, the sounder conclusion from the caveat is, that the sealing tests had in fact been made and had inspired the inventor with confidence enough to cause him to undertake the expense of the caveat, in order that he might protect that which might prove a valuable invention, if the cans so sealed should stand the test of time and handling; and that the fear with regard thereto caused him to express the apprehension that his invention was, as yet, immature.

3. Other questions have been discussed as arising on the record, viz: Is there any novelty in the alleged invention? Is not the same covered by the Fancher patent? Had it not been abandoned to public use by both Hodgson and Colhoun

for more than two years prior to application for patent? These are all grave questions, but they have not been passed upon in the Patent Office, though referred to in passing in some of the opinions of the examiners. The last and most serious of these questions was expressly reserved in the final opinion of the Commissioner, and remanded to the primary examiner for examination and determination. It is not properly determinable in this proceeding, and we shall confine ourselves to the matters actually passed upon and determined in the ruling appealed from.

For the reasons given, *the decision of the Commissioner must be reversed, and the proceedings, and decision herein made, be certified to the Commissioner of Patents as required by law; and it is so ordered.*